## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| HOWARD BRUCHHAUSER, ELIZABETH WOOD, WENDY UNTERSHINE, and ROBERT FLEENOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING, LLC, <br><br> Defendants. | Case No.: 18-cv-1260 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Howard Bruchhauser is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Elizabeth Wood is also an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Wendy Untershine is also an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiff Robert Fleenor is also an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him or her a debt allegedly incurred for personal, family, or household purposes.

8. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

9. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a as well as Wis. Stat. § 427.103(3).

11. Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

12. Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time Midland acquires them.

13. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

14. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *Tepper v. Amos Fin., LLC*, No. 17-2851, 2018 U.S. App. LEXIS 21907 *14-17 (3d Cir. Aug. 7, 2018) (holding that a debt buyer is a "debt collector" under the FDCPA when its principal purpose is the collection of debts); *see also Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017), *aff'd* 2018 U.S. App. LEXIS 21907 ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

15. The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts.

3

Case 2:18-cv-01260-JPS    Filed 08/14/18    Page 3 of 20    Document 1

16. Midland Funding's website contains an "FAQ" webpage, which states:

**Who is Midland Funding?**

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

17. Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

18. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

19. Midland Funding's role generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts. The primary purpose of debt buyers like Midland Funding is debt collection. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440

4

*16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

20. Midland Funding uses debt collectors, including MCM, to collect allegedly defaulted debts that have been assigned to Midland Funding. Midland Funding uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

21. Midland Funding by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed 319 small claims lawsuits against Wisconsin consumers in the month of December 2017 alone, including one against the Plaintiff in this action. When Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

22. Midland Funding is a debt collector as defined in 15 U.S.C. § 1692a. *Barbato*, 2017 U.S. Dist. LEXIS 172984; *Tepper v. Amos Fin., LLC*, 2017 U.S. Dist. LEXIS 127697 *20-22.

23. A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is vicariously liable for the actions of a second company (such as MCM) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

# FACTS

## *Facts Related to Plaintiff Bruchhauser*

24. On or about January 26, 2018, MCM mailed a debt collection letter to Plaintiff Bruchhauser regarding an alleged debt owed to Midland Funding. A copy of this letter is attached to this Complaint as Exhibit A.

25. Exhibit A lists an "Original Creditor" as "Citibank, N.A."

26. Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

27. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Bruchhauser inserted by computer.

28. Upon information and belief, Exhibit A is a form debt collection letter, used by MCM to attempt to collect alleged debts.

29. Upon information and belief, Exhibit A was the first written communication MCM sent to Plaintiff Bruchhauser regarding this alleged debt.

30. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

31. Exhibit A additionally includes the following text:

> Send disputes or an instrument tendered as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (855) 977-1969

32. The additional text in MCM's letter to Plaintiff Bruchhauser is inconsistent with 15 U.S.C. §§ 1692g(a)(4), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(emphasis added).

33. By encouraging the consumer to call MCM with any disputes, Exhibit A overshadows the FDCPA debt validation notice.

### *Facts Related to Plaintiff Wood*

34. On or about January 22, 2018, MCM mailed a substantially similar debt collection letter to Plaintiff Wood also regarding an alleged debt owed to Midland Funding. A copy of this letter is attached to this Complaint as Exhibit B.

35. Exhibit B lists an "Original Creditor" as "Capital One, N.A."

36. Upon information and belief, the alleged debt referenced in Exhibit B was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

37. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Wood inserted by computer.

38. Upon information and belief, Exhibit B is a form debt collection letter, used by MCM to attempt to collect alleged debts.

39. Upon information and belief, Exhibit B was the first written communication MCM sent to Plaintiff Wood regarding this alleged debt.

40. Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

41. Exhibit B additionally contains the following text:

> Send disputes or an instrument tendered as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (866) 361-0420

42. The additional text in MCM's letter to Plaintiff Wood is inconsistent with 15 U.S.C. §§ 1692g(a)(4).

43. By encouraging the consumer to call MCM with any disputes, Exhibit B overshadows the FDCPA debt validation notice.

8

### Facts Related to Plaintiff Untershine

44.     On or about March 28, 2018, MCM mailed a debt collection letter to Plaintiff Untershine regarding an alleged debt owed to Midland Funding. A copy of this letter is attached to this Complaint as Exhibit C.

45.     Exhibit C lists an "Original Creditor" as "Synchrony Bank"

46.     Upon information and belief, the alleged debt referenced in Exhibit C was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

47.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Untershine inserted by computer.

48.     Upon information and belief, Exhibit C is a form debt collection letter, used by MCM to attempt to collect alleged debts.

49.     Upon information and belief, Exhibit C was the first written communication MCM sent to Plaintiff Brauchhauser regarding this alleged debt.

50.     Exhibit C contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

51.     Exhibit C additionally includes the following text:

> Send disputes or an instrument tendered
> as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (800) 939-2353

9

52. The additional text in MCM's letter to Plaintiff Untershine is inconsistent with 15 U.S.C. §§ 1692g(a)(4), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(emphasis added).

53. By encouraging the consumer to call MCM with any disputes, Exhibit C overshadows the FDCPA debt validation notice.

54. Additionally, on or about March 28, 2018, approximately two weeks after mailing Exhibit C, MCM mailed another debt collection letter to Plaintiff Untershine regarding the same alleged debt owed to Midland Funding. A copy of this letter is attached to this Complaint as Exhibit D.

55. Upon information and belief, Exhibit D is also a form letter, generated by computer, with the information specific to Plaintiff Untershine inserted by computer.

56. Upon information and belief, Exhibit D is also a form debt collection letter, used by MCM to attempt to collect alleged debts.

57. Similar to Exhibit C, Exhibit D includes the following text:

> For disputes call (800) 939-2353 or write to:
> Attn: Consumer Support Services
> 2365 Northside Drive
> Suite 300
> San Diego, CA 92108

10

58. By encouraging the consumer to call MCM with any disputes within the 30-day validation period, Exhibit D also overshadows the FDCPA debt validation notice included in Exhibit C.

*Facts Related to Plaintiff Fleenor*

59. On or about February 9, 2018, MCM mailed a debt collection letter to Plaintiff Fleenor also regarding an alleged debt owed to Midland Funding. A copy of this letter is attached to this Complaint as Exhibit E.

60. Exhibit E lists an "Original Creditor" as "Citibank, N.A."

61. Upon information and belief, the alleged debt referenced in Exhibit E was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

62. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff Fleenor inserted by computer.

63. Upon information and belief, Exhibit E is a form debt collection letter, used by MCM to attempt to collect alleged debts.

64. Upon information and belief, Exhibit E was the sent within 30-days of receiving an initial written communication from MCM regarding the same alleged debt referenced therein.

65. Exhibit E additionally contains the following text:

> Send disputes or an instrument tendered as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (866) 361-0420

66. The text in MCM's letter to Plaintiff Fleenor is inconsistent with 15 U.S.C. §§ 1692g(a)(4).

11

67. By encouraging the consumer to call MCM with any disputes, Exhibit E overshadows the FDCPA debt validation notice.

*FDCPA Violations*

68. Exhibits A-E fail to clearly and unambiguously inform the unsophisticated consumer that, in order to invoke his or her right to require MCM to cease most collection activities until they provide verification of the debt, the consumer must make the request in writing. 15 U.S.C. § 1692g(a)(4). Instead, it tells the consumer to "you may also call."

69. The practical effect of the request to call MCM is to discourage consumers from disputing debts in writing.

70. An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided. 15 U.S.C. § 1692g(b).

71. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

72. The instruction in Exhibits A-E that the consumer may submit disputes via telephone is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Macy v. GC Servs. Ltd. P'ship*., Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist.

LEXIS 134421 *14-15 (W.D. Ky. Sep. 29, 2016); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

73. Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

74. Exhibits A-E confusingly and misleadingly directs the consumer to notify PRA about disputes without informing the consumer that oral disputes do not trigger verification.

75. Courts throughout the country have found that a debt collector overshadows the debtor's statutory validation rights by directing consumers to dispute their debts by telephone. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v.*

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

76. Furthermore, the overshadowing effect is compounded by Exhibit D, because the letter does not reference the debtor's validation rights or explain the effect of disputing the debt orally or in writing. *Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *17-22 ("the absence of a reprinted validation notice or reference to the debtor's right to request validation, combined with the specific text of a second letter, can create impermissible overshadowing or contradiction."); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) ("Given the substance and form of the second letter, we conclude that it did overshadow and contradict the notice. In fact, the first letter appears to represent the functional equivalent of a validation notice set forth on the reverse side of a single letter. Just as the debt collector in *Caprio* set forth the 'please call' language on the front of the letter and 'relegated' the 'required Validation Notice' to 'the back side of the Collection Letter,' Certified Credit included 'PLEASE CALL' language in a letter mailed ten days before the expiration of the validation period—while 'relegating' the legally mandated validation notice to a letter it had sent to Laniado more than three weeks earlier. Unlike its counterpart in *Caprio* (which included an instruction in all capital letters directing *Caprio* to see the reverse side for important

14

information), the March 5, 2014 letter did not even mention or otherwise refer to the February 13, 2014 letter. Given the circumstances, it is certainly conceivable that the least sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in a mailing received shortly before the deadline and make an ineffective toll-free phone call to do so.") (internal citations omitted); *see also, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

77. MCM did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

78. The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

79. Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7, 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).).

15

80. For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material violation of the FDCPA. A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

81. MCM's statement that the consumer call with disputes about an alleged debt overshadows the validation notice. 16 U.S.C. § 1692g.

82. Plaintiffs were confused, misled, and deceived by Exhibits A-E.

83. The unsophisticated consumer would be confused, misled, and deceived by Exhibits A-E.

84. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane*

16

*v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

85. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

86. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

87. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

88. 15 U.S.C. § 1692g(b), among other things, provides: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

## COUNT I – FDCPA

89. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. By encouraging consumers to call MCM with any disputes, Exhibits A-E fail to inform the consumer that, in order to invoke his or her right to obtain verification of the debt under 15 U.S.C. § 1692g(a)(4), the consumer must make the request in writing.

91. Exhibits A-E seeks to collect a debt on behalf of Midland Funding.

92. Defendants violated 15 U.S.C. §§ 1692g(a), 1692g(b), 1692e, and 1692e(10).

## CLASS ALLEGATIONS

93. Plaintiff brings this action on behalf of two Classes.

94. Class I (the "Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibits A-E to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes (d) between August 14, 2017 and August 14, 2018, inclusive (e) that was not returned by the postal service.

95. Class II (the "Milwaukee County Class") consists of (a) all natural persons in Milwaukee County, (b) who were sent a collection letter in the form represented by Exhibits A-E to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or

18

household purposes (d) between August 14, 2017 and August 14, 2018, inclusive (e) that was not returned by the postal service.

96. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

97. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-F violate the FDCPA.

98. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

99. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

100. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

101. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: August 14, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

20